IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Walter Lomax Campbell, #75733-004, | ) CIVIL ACTION NO. 9:08-4078-DCN-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Dep. Sheriff Officer B.A. Smith, and Sgt. R. Lane | ) |
| Defendants. | ) |

This action was filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1] Plaintiff alleges that the Defendants violated his constitutional rights by subjecting him to a false arrest and imprisonment.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 29, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

---

[1] Although the only two remaining Defendants in this case are both Sheriff's Deputies, Plaintiff originally included some federal officials as Defendants in this lawsuit. Lawsuits are brought under § 1983 against state officials, while actions against federal officials for violations of constitutional rights are brought pursuant to Bivens. Harlow v. Fitzgerald, 457 U.S. 800, 814-820 and n. 30 (1982).



The Defendants subsequently filed motions to dismiss on August 7, 2009, following which a second Roseboro order was enter on August 11, 2009. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motions on August 17, 2009.[2]

The Defendants' motions are now before the Court for disposition.[3]

## Background and Evidence

Plaintiff alleges in his verified complaint[4] that on February 3, 2005 he was standing in front of an apartment building with another individual when he was approached by the Defendants Smith and Lane, both Greenville County Sheriff's Deputies. Plaintiff alleges that the Defendants arrested him "for allegedly being in possession of 2.4 grams of cocaine base found next to a vehicle; and after illegally searching the car without a search warrant, discovered a blue steel, semi-automatic pistol lying between the driver side seat and the console." Plaintiff further alleges that, as a result, he was "falsely arrested for possession of cocaine base 2.4 grams and held for transportation to federal custody for charges of possession with intent to distribute crack cocaine within a half mile of a school or park, [P]ossession with intent to distribute crack cocaine, Possession of a fire arm(s)

---

[2] Although styled as a "Response in Opposition to Summary Judgment", Plaintiff also addresses the grounds for dismissal set forth in Defendants' motions to dismiss in this response.

[3] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motions for summary judgment and/or to dismiss. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[4] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



with serial number obliterated, and unlawful carrying of a pistol".

Plaintiff alleges that the Defendants knew that the cocaine base was not in his possession, nor was there a criminal complaint supported by affidavit sworn under oath before a judge filed charging him with possession of cocaine base to justify a valid warrant for his arrest. Plaintiff also alleges there was no evidence that he had affected commerce by transporting the alleged firearm though interstate commerce. Plaintiff alleges that he was nevertheless held and turned over to federal custody "without probable cause established by a criminal complaint filed with affidavit or an arrest warrant for his arrest." Plaintiff further alleges that he was subsequently indicted in a two count indictment in United States District Court for being a felon in possession of a firearm (Count One) and possession with intent to distribute crack cocaine (Count Two). See also Exhibit B to Plaintiff's Complaint. Plaintiff then generally alleges that his prosecution on these charges was improper for various reasons, leading to his entry of a guilty plea to Count One of the federal Indictment on December 18, 2006. See also Exhibits C and D to Plaintiff's Complaint.

Plaintiff alleges in this lawsuit that he was subjected to three years and ten months of false arrest and imprisonment on Count Two of the Indictment, which was dismissed following entry of his guilty plea, that the Defendants "were objectively unreasonable and knew that the evidence was insufficient to sustain a conviction and lacked jurisdiction over the possession of the crack cocaine charge for Count Two", and seeks both compensatory and punitive damages. Plaintiff has also submitted excerpts from his pre-sentence investigation report, which are attached as Exhibit A to his complaint. See generally, Verified Complaint with attached Exhibits.

In support of dismissal of the case, the Defendant B. A. Smith has submitted an affidavit wherein he attests that the Incident Report dated February 3, 2005, and which is attached



to his affidavit, is a true and accurate statement relative to the events which occurred on that date. The Incident Report reflects that on February 3, 2005 Smith was on patrol when he observed two unknown subjects leaning on the front quarter panel of a vehicle, which was backed into a space with the headlights on at an apartment complex that was within his area of patrol. As he approached in his marked patrol car one of the subjects saw him and "went toward Apartment 25G." The other suspect (the Plaintiff) did not see Smith until he was pulling up beside the vehicle, but when he saw Smith he took his right hand out of his jacket pocket, put it down by his leg, opened his hand, and dropped something. Smith attests that both of Plaintiff's hands had been in his jacket pockets when he was approached. See Smith Affidavit, see also Incident Report.

Smith further relates in the Incident Report that when he stopped his car and got out, the subject who had gone toward Apartment 25G went inside that apartment, while Plaintiff went to the rear of the vehicle (suspect vehicle No. 2) which was idling. Smith states that when he approached the Plaintiff, who still had his hands in his pockets, and asked him to remove his hands, he initially refused. Smith then contacted the Defendant Sgt. Lane via radio and asked him to come assist him. The subject identified himself as the Plaintiff, and Smith asked him if the vehicle he was leaning on (suspect vehicle No. 2) was his. Plaintiff pointed to a blue Suburban parked next to suspect vehicle No. 2 and stated that that vehicle was his. Smith states that he was familiar with the blue Suburban because he had seen it on the property earlier in the day, that Sgt. Lane had run the tag, and that they knew that the Suburban was registered to a Frank Rozier, not to the Plaintiff. Smith states that at that point, he did not know if the Plaintiff was lying about his identity or if perhaps the truck had been stolen, so he asked Plaintiff for his identification. Plaintiff produced a Florida ID with the correct name on it, and when Smith then asked him if the truck was his and, if

4



so, why it was not in his name, Plaintiff stated that he "had the paperwork on it." Smith states that he asked to see this paperwork, at which time Plaintiff opened the door to the Suburban to look for the registration. Smith states that while Plaintiff was looking in the console in the dash, he was having a phone conversation with an unknown subject. He then produced the registration of the vehicle with the name of Frank Rozier on it, and said "he is my partner-the vehicle is in both our names." Plaintiff told Smith that he did not have a South Carolina address, so when he bought it Rozier let him put it in his name to have a South Carolina address.

The Incident Report further reflects that, as Plaintiff was looking for the registration, Smith observed a small plastic looking "baggie" containing a white rock looking substance in the console. Smith states that, based on his years of experience he knew this was how crack cocaine was packaged, so once Plaintiff handed him the registration, he asked Plaintiff if he had any weapons or drugs on him or in the vehicle. Plaintiff denied having any weapons or drugs, and voiced no objection to being checked for weapons. Smith then "padded" Plaintiff down, and also leaned into the vehicle to retrieve the baggie, at which time he observed a semi-automatic pistol lying between the driver side seat and the console. Plaintiff was then handcuffed by Smith and Sgt. Lane, and was placed in the patrol car. The firearm was secured, and was found to have one live round in the chamber as well as fifteen more rounds in the magazine. The serial number had been filed off. The substance in the baggie field tested positive for crack cocaine.

Sgt. Lane also observed some pieces of white rock like substance laying in the parking lot near the front of suspect vehicle No. 2, and Smith informed Lane that Plaintiff had dropped something as he had approached him. Smith's report states that the material Lane had found was in the area where Smith had seen Plaintiff drop something, no one else had been near that

5



vehicle since Smith had gotten out of his car, and there was not anything else laying on the ground that may have been dropped. These white rock substances also field tested positive for crack cocaine. The crack cocaine found in the Suburban weighed 2.4 grams while the crack cocaine found beside the vehicle weighed 2.6 grams.

The Incident Report further states that when they were retrieving the crack cocaine from beside vehicle No. 2, he [Smith] observed a revolver laying in the front seat of the vehicle, which was still running. He then went to Apartment 25G to try to get the other subject to come, but no one would come to the door. Smith states that suspect vehicle No. 2 was unlocked and running, and that when they checked the tag it was found to also belong to a Frank Rozier and had been stolen. An inventory was then done on both vehicles before releasing them to the wrecker services.

Smith states that he maintained possession and control of the crack and Sgt. Lane had possession of the firearms as they transported Plaintiff to the jail. After the wreckers arrived, Smith went before "Mag. Garrison" and obtained warrants, which were subsequently served by Sgt. Lane. The warrant numbers are listed on Page 1 of the Incident Report. See generally Smith Affidavit with attached (sworn to) Incident Report.

The Defendant R. Lane has also provided an affidavit, wherein he attests that the incident report dated February 4, 2005, a copy of which attached to his affidavit, is a true and accurate statement relative to the events which occurred on February 3, 2005. The Incident Report attached to Lane's affidavit recounts the events set forth in Smith's Incident Report. This Incident Report further reflects that Plaintiff was arraigned before "Mag. Garrison" on the listed warrants, and was given $15,000 bonds on the two crack cocaine warrants and $5,000 bonds on the two weapons warrants. Plaintiff was then placed in the jail in good physical condition. See generally Lane



Affidavit, with attached (sworn to) Incident Report.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Defendants argue, inter alia, that this action should be dismissed because Plaintiff's claim for false arrest/imprisonment is barred by the applicable statute of limitations. The statute of limitations for Plaintiff's false arrest/imprisonment claim at most is three years; see S. C. Code Ann. § 15-3-530(5); see also Huffman v. Tuten, 446 F.Supp. 2d 455 (D.S.C. 2006); Thompke v. City of Myrtle Beach, No. 05-452, 2007 WL 950388, * 5 (D.S.C. March 26, 2007); which began to run when he was detained pursuant to legal process. Wallace v. Kato, 127 S.Ct. 1091, 1100 (2007). Thereafter, Plaintiff's claim for false arrest/imprisonment ceased. If pursued after that point, it

7



would have to be pursued as a malicious prosecution claim. Wallace, 127 S.Ct. at 1095-1096.

The federal indictment issued in this case was filed on August 8, 2006, within three years of the filing of this case on December 19, 2008. However, it is readily apparent from the evidence filed with the court that Plaintiff had previously been charged by state officials, with that prosecution subsequently being deferred for federal prosecution. Defendants' affidavits reflect that, following Plaintiff's arrest on February 3, 2005, he was charged and subsequently indicted in state court on four separate charges; PWID crack cocaine within one half mile of a school (Case No. 425059), PWID crack cocaine (Case No. 425060), possession of a weapon with an altered serial number (Case No. 425061), and unlawful carrying of a pistol (Case No. 425062). The Defendant Lane's Incident Report, sworn to as accurate and incorporated into his affidavit, and which is dated February 4, 2005 (the day after Plaintiff's arrest), reflects that Plaintiff received $15,000 bonds on the two crack cocaine charges, and $5,000 bonds on the two weapons charges.[5]

Plaintiff does not specifically address or dispute the Defendants' evidence in his response memorandum, but instead argues in his brief that his claims are not barred by the statute of limitations because his limitations period did not begin to run until after his conviction on Count One of his federal indictment. Plaintiff's argument is an incorrect statement of law. False arrest and

---

[5]Even assuming that Plaintiff had not been formally charged and received bonds by the day after his arrest, as is reflected in the Defendants' evidence, a check of the Greenville County Thirteenth Judicial Circuit Public Index search shows that Plaintiff was subsequently indicted on these charges on March 15, 2005 (True Bill date), well over three years prior to the Plaintiff having filed this lawsuit (Indictment Nos. 05-GS-2301966, 2301963, 2301965 and 2301964). See www.greenvillecounty.org/scjd/publicindex/SCjdPublicIndex. As this index does not constitute an official government record, the undersigned has not considered the True Bill date of these indictments for purposes of issuing this Report and Recommendation. However, out of an abundance of caution, defense counsel is directed to file copies of these indictments within ten (10) days of the date of this opinion so they will be available for review by the Court in the event any objections are filed.



imprisonment is detention without legal process, and, as previously noted, the limitations period for such a claim begins to run when the alleged false imprisonment ends. Wallace v. Cato, 127 S.Ct. at 1096-1097 ["Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - when, for example, he is bound over by a Magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process."] (internal citations omitted); See also Singer v Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995) (quoting Prosser and Keeton on Law of Torts § 119, pp. 885-886 (5th ed. 1984)["If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself"]); Jones v. City of Columbia, 389 S.E.2d 662, 663 (S.C. 1990)["An action for false imprisonment cannot be maintained where one is arrested by lawful authority"].

Since the record before the Court reflects that Plaintiff became detained pursuant to legal process in February 2005, more than three years before this complaint was filed, Plaintiff's claim for false arrest and/or imprisonment is timed barred and should be dismissed.

**II.**

Even assuming for purposes of summary judgment that the Court would not find Defendants' evidence sufficient to show issuance of process on these charges in February 2005[6],

---

[6]While referenced in the Defendants' affidavit, no copies of the charging documents themselves have been filed with the Court. See also, n. 5, supra.



thereby defeating the Defendants' statute of limitations defense, Plaintiff's false arrest/imprisonment claim still fails. While Plaintiff's drug charges were ultimately dismissed following entry of his plea to the weapons charges,[7] in assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest, irregardless of whether or not an arrestee is ultimately found to be guilty or innocent of the criminal charge itself; Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996); White v. Coleman, 277 F.Supp. 292, 297 (D.S.C. 1967); and "[t]o prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [he] was violating [the law]". Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002). Plaintiff has failed to make any such showing.

The evidence before the Court shows that one and/or both of the Defendants saw Plaintiff drop an object from his hand, that material was subsequently found on the ground which on observation appeared to be crack cocaine and which subsequently field tested positive for crack cocaine, and that a substance appearing to be crack cocaine and subsequently field tested positive for crack cocaine was found in an automobile which Plaintiff stated belonged to him. Based on the facts and evidence presented, the undersigned does not find that a genuine issue of fact exists as to whether the Defendants acted without probable cause when they arrested the Plaintiff. Therefore, Plaintiff has no claim for false arrest and/or imprisonment against the Defendants. Taylor, 81 F.3d at 434 [In assessing the existence of probable cause, courts examine the totality of the circumstances known to an officer at the time of the arrest]; Brooks v. City of Winston Salem, 85 F.3d 178, 181 (4th Cir. 1996)[No claim for false arrest where arrest was made pursuant to probable cause]; cf.

---

[7]Plaintiff's false arrest/imprisonment claim relates to his drug charges, not the weapons charges to which he plead guilty. See Complaint, p. 5.



Sumpter v. United States, No. 06-1004, 2008 WL 5378232, * 4 (D.S.C. Dec. 19, 2008).

### III.

Finally, to the extent Plaintiff's claim can be deemed to extend to one for malicious prosecution, a tort probably not "chargeable to [Defendants] here"[8] (since they are not the ones who prosecuted the Plaintiff), and further assuming for purposes of summary judgment that such a claim would not be barred by Heck v. Humphrey, 512 U.S. 477 (1994)[9], lack of probable cause is also a requirement to prevail on a claim for malicious prosecution. Lambert v. Williams, 223 F.3d 257, 260-261 (4th Cir. 2000) [claim for malicious prosecution requires a showing that the initiation or maintenance of a proceeding against the plaintiff was without probable cause to support it and a

---

[8] Wallace, 127 S.Ct. At 1097.

[9] Under Heck v. Humphrey, in order to recover damages for an allegedly unconstitutional prosecution, a § 1983 Plaintiff must prove that the criminal charges on which the claim is based were resolved in his favor. See Brooks v. City of Winston-Salem, 85 F.3d at 183 [Claim for malicious prosecution does "not accrue until a favorable termination is obtained."]. While Plaintiff notes that the drug charges on which his claim is based were dismissed, his plea of guilty to the weapons charge effectively bars not only claims which would call into question the validity of the charges to which he pled guilty, but also any charges which were nol prossed as a result of that plea. As the evidence before the court reflect that Plaintiff entered a guilty plea to some charges, with the remaining charges then being dismissed or nol prossed, this is not a favorable disposition of these other charges under South Carolina law. McKenney v. Jack Eckerd Co., 402 S.E.2d 887-888 (S.C. 1991); cf. State v. Gaskins, 210 S.E.2d 590, 592 (S.C. 1974); cf. Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997)["The Plaintiff has the burden of proving a favorable termination. (Citation omitted). The Plaintiff meets his burden of proof only when he establishes the nolle prosequi was entered for reasons consistent with his innocence. (citation omitted). The circumstances surrounding the cessation of the criminal proceedings must compel an inference that reasonable grounds to pursue the criminal prosecution were lacking." (citation omitted)], cert. denied, 118 S.Ct. 1515 (1998); Powers v. Sickler, No. 93-617, 1995 WL 146272, * 5 (N.D.N.Y. Mar. 31, 1995)["[A] conviction is conclusive evidence of probable cause, all of these claims question the validity of [Plaintiff's] conviction"] (citations omitted) citing also Roesch v. Otarola, 980 F.2d 850, 853-854 (2d Cir. 1992) [holding that requirement that 1983 plaintiff received favorable termination applies equally to claims of false arrest, false imprisonment and malicious prosecution]. Therefore, Heck would appear to bar any malicious prosecution claim.



termination thereof occurred in favor of the plaintiff], cert. denied, 531 U.S. 1130 (2001); cf. Jordan v. Deese, 452 S.E.2d 838, 839 (S.C. 1995). Therefore, any such claim must also be dismissed.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motions to dismiss and/or for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 1, 2009

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 2940

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

